UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sophie A. Walters,

    Plaintiff,

    v.

Commissioner of Social Security,

    Defendant.

Case No. 2:13–cv–237

Judge Michael H. Watson

## OPINION AND ORDER

Sophie A. Walters ("Plaintiff") objects to Magistrate Judge Abel's report and recommendation ("R&R") recommending the Court affirm the decision of the Commissioner of Social Security in this social security case. Obj., ECF No. 11. For the following reasons, the Court overrules Plaintiff's objections.

### I.    PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits related to back pain was denied initially and on reconsideration. After an administrative hearing, the administrative law judge ("ALJ") issued a decision denying benefits. Plaintiff moved for review of the ALJ's decision, which the Appeals Council denied. Plaintiff seeks review in this Court.

Plaintiff argues the ALJ improperly found that she had no severe impairment lasting twelve months at step two of the disability determination process and that such a finding is not supported by substantial evidence.

Plaintiff contends first that her impairment certainly met the *de minimis* threshold to be considered a severe impairment. She next asserts the evidence showed it lasted more than twelve months. Plaintiff argues the ALJ erroneously adopted the opinions of reviewing sources while eschewing the opinions of all treating and examining sources in finding otherwise.

Plaintiff also contends that she should be found disabled pursuant to the Grid Rules.

Defendant asserts the ALJ properly concluded there were no medical signs or laboratory findings to substantiate the existence of any medically determinable impairment or combination of impairments that lasted or was expected to last for a continuous period of at least twelve months. Defendant argues the ALJ discussed the objective medical evidence and gave proper weight to the opinion evidence when reaching that conclusion.

## II.   STANDARD OF REVIEW

Magistrate Judge Abel issued the R&R pursuant to Federal Rule of Civil Procedure 72(b). Under that rule, the Undersigned must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The undersigned may accept, reject, or modify the R&R, receive further evidence, or return the matter to the Magistrate Judge with instructions. *Id.*

## III. ANALYSIS

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

Thus, to be considered disabled, one must have a physical or mental impairment. The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. In other words, the impairment must "be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; SSR 96-4p ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment."). "In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation processs . . . ." SSR 96-4p.

Further, the medically determinable impairment must qualify as a "severe impairment." 20 C.F.R. § 404.1505(a); 404.1520(c). "Severe impairment" is defined in the negative:

> An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. . . . When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(a)–(b).

Finally, in addition to the impairment being "severe," the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. This is called the duration requirement. *Id.*

In this case, the first issue is whether Plaintiff demonstrated an impairment which could be shown by medically acceptable clinical and laboratory diagnostic techniques. Plaintiff has demonstrated such a physical impairment, and it appears the ALJ so concluded. The ALJ stated Plaintiff has "mild, multi-level degenerative disc disease of her lumbar spine." ALJ Decision 4, ECF No. 6. That physical impairment was shown by medically acceptable clinical and laboratory diagnostic techniques, as an x-ray of the lumbar spine taken February 20, 2008 (two days after Plaintiff's accident) showed mild degenerative changes, a CT of the lumbar spine taken the same day showed multilevel degenerative changes with mild disc bulges, and an MRI from March 2008 showed mild

concentric annulus bulging, with a slight encroachment into the lateral recesses. *Id.* (citing Ex. 2F at 3; Ex. 4F at 7, 8; Ex. 7F at 1, 2).

The next two issues are whether the physical impairment qualified as a "severe" impairment and whether it lasted or could be expected to last for a continuous period of not less than twelve months. The ALJ's decision is not entirely clear as to whether he found the impairment to not be "severe" in the sense that it did not significantly limit Plaintiff's physical or mental ability to do basic work activities, but it is clear the ALJ found that any impairment that would otherwise be "severe" did not meet the duration requirement.

In this case, the record evidence showed that during a May 13, 2008 evaluation for her Worker's Compensation claim, which was allowed based on the lumbar sprain rather than the degenerative disc disease, Plaintiff had indicated she had halfway recovered from her February injury, although she still had intermittent pain that radiated down her right leg as well as problems lifting and sitting or standing for more than forty-five minutes. Ex. 2F at 3. At that time, the examining physician for the Worker's Compensation claim recommended returning only to sedentary work, although the physician opined an ability to return to previous work activity sometime in the future upon full recovery. *Id.* at 5.

Plaintiff returned to "light duty" work in July 2008 (five months after her accident) with the following restrictions: no lifting more than fifteen pounds, and

stooping, bending, crouching, walking, standing, and sitting as able (imposed by Dr. Veratti after a June 2008 examination of Plaintiff). Ex. 1F at 8, ECF No. 6.

The ALJ noted that in October 2008, Plaintiff completed all activities during a physical therapy session without difficulty and denied any pain throughout the evaluation. Ex. 4F at 14, 16. Based on Plaintiff's performance, the physical therapist placed no restrictions for non-material handling activities on Plaintiff. *Id.* With respect to material handling, the physical therapist found Plaintiff could handle weight for the sedentary, sedentary-light, and light categories. *Id.* Thus, the physical therapy treatment notes indicate that as of October 2008, Plaintiff would have no significant limitations on her ability to do basic work activities as she had no restrictions on sitting, standing, walking, crawling, climbing stairs, squatting, bending, reaching, or stooping and could frequently lift ten to twenty-five pounds. *Id.* at 13. Notably, the notes also indicate that Plaintiff stated she did not feel that she needed to be on any restrictions and was not taking any medications for pain at that time. *Id.* at 14.

The plant Plaintiff worked for shut down in October 2008, and she received unemployment benefits for approximately one year and a half, until sometime in 2010. Tr. of Oral Hearing, PAGEID # 54, ECF No. 6.

In June 2010, Plaintiff underwent a consultative physical examination with a worker's compensation medical examiner. Plaintiff complained of occasional back pain and having to limit standing, bending, walking, and lifting. Ex. 2F at 1. The physical examination, however, revealed no tenderness, muscle guarding, or

spasm of the Lumbosacral Spine. Toe and heel walking and station and gait were normal. Based on the examination, the examining physician rated Plaintiff a 0% whole person impairment.

A July 26, 2010 examination by a chiropractor, Dr. Ashbaugh, indicated Plaintiff complained of lower back pain with intermittent pain radiating down her right leg. Ex. 6F at 1. She further reported limitations in sitting, standing, walking, and lifting. *Id.* The physical examination revealed normal gait and station but some muscle tightness. *Id.* at 2. Plaintiff also exhibited some pain upon pressure and palpation over the lumbosacral region. *Id.* Dr. Ashbaugh opined a 13% whole person permanent partial impairment "for the injury that occurred on 2-18-08." *Id.*

In January 2011, Dr. Thompson performed a consultative examination of Plaintiff as part of her application for Social Security disability insurance benefits. He noted that Plaintiff complained of chronic aching discomfort in her low back. He noted, however, that she did not have symptoms strongly suggestive of radiculopathy. Ex. 3F at 1. Those exam notes also state that Plaintiff did not receive treatment for her back since the accident. *Id.* Dr. Thompson's examination revealed that Plaintiff's gait and station were normal, and she could walk heel to toe. She had "excellent" range of motion in her lumbar spine. *Id.* at 2. Plaintiff had normal vision, speech, hearing, abilities to grasp and manipulate, tendon reflexes, and full range of motion in her joints. *Id.* The only impression noted was degenerative disc disease. *Id.* Dr. Thompson found no limitations on

sitting, standing, walking, occasional lifting, or use of upper extremities, but he did impose a limitation on repetitive lifting or bending. *Id.* As the ALJ noted, however, Dr. Thompson's limitation on lifting was not based on any findings during his physical examination but was rather based on Plaintiff's subjective reports that she was unable to do repetitive lifting or bending. *Id.*

Plaintiff also saw her primary care physician in May 2010 and June 2011, but those visits were primarily to discuss Plaintiff's thyroid. Ex. 8F. Nonetheless, in December 2011, Dr. Miller completed a Physical Capacity Evaluation which limited Plaintiff to, *inter alia*, standing fifteen minutes at a time, walking thirty minutes at a time, sitting sixty minutes at a time, and lifting between eleven and twenty pounds rarely. Ex. 9F at 3. On the questionnaire, Dr. Miller noted that she did not at any time provide care for Plaintiff's back injury. *Id.* at 4.

Given the medical record, the ALJ gave great weight to a reviewing state agency opinion that Plaintiff's impairment was not severe and that while she may experience back pain at times, her ability to perform work related activities was only mildly limited. Ex. 3A at 4. The ALJ did not give very much weight to Dr. Thompson's opinion because the limitations he imposed were based entirely on Plaintiff's subjective complaints. As such, the ALJ noted that any finding of a severe impairment would not be based on objective clinical findings or the result of physical examination. Moreover, the ALJ concluded that even if he accepted Dr. Thompson's opinion to find a severe impairment, it would not necessarily relate back to the alleged onset date as the back pain could have developed long

after 2008.  Likewise, Dr. Miller's opinion was also given little weight because it was not based on objective medical records, Dr. Miller did not treat Plaintiff for back pain, and he also did not indicate that any pain was present during the December 2011 examination related back to the onset date of 2008.

Plaintiff argues on objection to the R&R that the ALJ should not have weighed the evidence until after step two of the disability determination.  Plaintiff argues the only requirement at step two was to "demonstrate more than a slight impairment in ability to function that more than minimally affected her ability to work."  Reply 2, ECF No. 9.  That is not the complete standard at step two, however.  At step two, the ALJ determines whether there is a severe impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. §§ 404.1505(a); 404.1520(a)(ii).  Plaintiff has pointed to no regulations saying the ALJ cannot weigh the evidence of record in determining: (1) if the impairment is indeed severe, and (2) if the severe impairment lasted at least twelve months, so long as any opinions weighed are relevant to those determinations.  The Court finds the ALJ did not weigh the evidence for purposes of establishing a residual functional capacity, which could only have been done if the analysis proceeded past step two.  Rather, the ALJ discounted or credited the different opinions to determine if Plaintiff had any impairment that qualified as "severe."

Given the record, the ALJ correctly found there is nothing to suggest Plaintiff sought or received medical treatment for her lower back pain from

October 2008—when she reported being pain free and was released from physical therapy with virtually no restrictions—until at least June of 2010, when she was examined for her worker's compensation claim. Even then, in June and July of 2010, she was found first to have a 0% whole person impairment and then a 13% whole person permanent partial impairment. The only medical signals to support any impairment after October 2008 were noted during the July 2010 examination by Dr. Ashbaugh. And although the 13% whole person permanent partial impairment was found to relate to her February 2008 accident, there was no evidence Plaintiff had a *continuing* impairment for at least twelve months between 2008 until July 2010. Rather, substantial evidence supports the ALJ's finding that the impairment ended by October 2008, even if it returned at some point by July 2010. *See also* Ex. 1F at 2–3 (summary reports from Coshocton Occupational Medicine show steady improvement from February 2008 through September 2008, when Plaintiff reports little pain). Nor does the July 2010 examination, which resulted in a permanent partial impairment finding for purposes of Worker's Compensation, mean that Plaintiff had a severe impairment as defined by the Social Security Administration. *See* § 404.1504 ("A decision by another agency that [a claimant] is disabled . . . is not binding on [the Social Security Administration.").

Substantial evidence also supports a conclusion that Plaintiff did not suffer a severe impairment continuously from July 2010 onward. In January 2011,

Plaintiff had a virtually normal consultative examination with the only limitations being based entirely on her subjective complaints.

Given this evidence, there was substantial support for the ALJ's conclusion that the duration requirement was not met, even if one could find that Dr. Ashbaugh's opinion is some evidence suggesting the impairment lasted from February 2008 until July 2010 and Dr. Miller's opinion is some evidence the impairment lasted from February 2008 until December 2011. *Higgs v. Bowen*, 880 F.2d 860, 863–64 (6th Cir. 1988) (The Sixth Circuit has "previously upheld an administrative finding of no severe impairment despite conclusory disability opinions submitted by two treating physicians."). This Court asks on review not whether substantial evidence exists to support Plaintiff's position but whether substantial evidence supports the ALJ's decision. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).

## IV. CONCLUSION

For the above reasons, the Court overrules Plaintiff's objections to the R&R. The Clerk shall enter judgment for the Defendant and terminate the case.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**